IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISCTRICT OF PUERTO RICO

CASE NO. 18- 07219 ESL

IN RE CALEB NEIRA RIVERA

**REQUEST FOR DISMISSAL AND BAR TO RE-FILE**

TO THE HONORABLE COURT:

COMES NOW creditor SCOTIABANK OF PR (from here on "Scotiabank"), through the undersigned counselor and very respectfully States, Alleges and Prays as follows:

## I. INTRODUCTION

On December 11, 2018, debtor Caleb Neira Rivera filed the instant bankruptcy petition along with their Chapter 13 Schedules, Statement of Financial Affairs, Statement of Current Monthly Income and proposed Chapter 13 Payment Plan.

Debtors bankruptcy petition, Official Form 101, lists two previous bankruptcy cases, 12-08577 ESL and 15-05590 ESL. Neither of these cases were completed or received discharge from this bankruptcy court, yet debtor states under penalty of perjury in his Schedule D that Scotiabank's mortgage loan was discharged. Debtor's penance for lying under oath and misrepresenting facts has already been sanctioned by local courts.

It must be brought to the Court's attention that debtor has been actively using the judicial systems to delay the foreclosure and the eviction of a property for which a state court judgment

was issued on 2009 in favor of the mortgage creditor. With his limitless judicial disruptions, debtor has caused Scotiabank to incur in significant attorney fees and had flooded our state and federal judicial courts with frivolous motions.

This bankruptcy filing is yet another frivolous and unwarranted attempt to avoid debtor's eviction from a property that was foreclosed by Scotiabank on 2016.

We hereby submit a chronological history of the pertinent legal processes and judgments rendered for this Court's consideration, as:

## II. STATEMENT OF FACTS

1. On July 29, 2009 R.G. Premier Bank of Puerto Rico filed a collection of monies and mortgage foreclosure suit against debtor and his wife Daisy Rodriguez in the Court of First Instance of Puerto Rico, Superior Court of San Juan, Case No. KCD2009-2927. See **Exhibit #1 State Court Judgment in Foreclosure Case.**

2. Debtor and his wife were served with summons and failed to appear. See **Exhibit #1 State Court Judgment in Foreclosure Case.**

3. On December 15, 2009 the Court of First Instance of Puerto Rico entered judgment in default against Debtor and his wife in the amount of $821,794.97 plus interest at the agreed rate of 8 ½ per cent per year, which as of June 30, 2009 amounted to $63,777.70 and would continue to accumulate at a rate of $174.63 per day, plus additional sums for surcharges and attorney fees. See **Exhibit # 1 State Court Judgment in Foreclosure Case.**

4. On April 30, 2010 the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico closed RG-Premier Bank and designated the Federal Deposit Insurance Corporation (FDIC) as receiver. Consequently, the FDIC entered into a Purchase and Assumption Agreement with Scotiabank, thereby executing a legal transfer of RG's assets to Scotiabank, including Plaintiffs' promissory note. See **Exhibit # 2 (FDIC Press Release).**

5. The Judicial Sale of the Property was scheduled for October 29, 2012 at 10:30 am. See **Exhibit #3, 2017 Relief Case Judgment**[1].

6. On October 27, 2012, Debtor filed a voluntary petition with the Bankruptcy Court of the District of Puerto Rico, under chapter 11 of the Bankruptcy Code, Case No. 12-8577 ESL. See, Case 12-08577 docket.

7. On November 28, 2013 Debtor filed a motion requesting voluntarily dismissal of the bankruptcy case alleging in pertinent part that "*debtor's situation has changed, and he recognizes that he cannot reorganize and comply with the proposed payment plan*." On December 16, 2013 the Bankruptcy Court granted Plaintiffs request and dismissed the bankruptcy case. See, Case 12-08577 docket.

8. The proposed reorganization plan or payment plan was never confirmed. See, Case 12-08577 docket.

9. The Judicial Sale of the Property was rescheduled for July, 2015.

10. On July 22, 2015 Debtor filed a second bankruptcy petition, case num. 15-05590. See, Case 15-5590 docket.

---

[1] Due to the voluminous number of exhibits, we have opted to include the most recent Judgment dated November 16, 2018 and notified on December 3, 2018 which includes a significant chronological assessment of the procedural history of debtor's cases in its findings of fact, as supporting evidence of these statements. Should the Court require specific notices and orders, the same are available and can be provided.

11. On August 19, 2015 Debtor filed a request for voluntary dismissal of their bankruptcy petition before a §341 meeting had been held and before having the opportunity to propose a Plan of Reorganization. See, Case 15-5590 docket.

12. On October 2, 2015, Debtor filed a Complaint for the Relief of Judgment pursuant to Rule 49.2 of the PR Rules of Civil Procedure, alleging in pertinent part that Scotiabank was not the holder of the mortgage note and that the mortgage had not been properly recorded, case No. KAC2015-0892 (2015 Relief Case). See **Exhibit #4, Judgment for Case KAC2015-0892**.

13. At the initial Hearing held for the 2015 Relief Case, the Court ordered Scotiabank to produce the original mortgage note for inspection and to produce a Registry Certification. Scotiabank promptly complied with the state courts order. See **Exhibit No. #5, "Motion Informing Status of the Case Before Pre-Trial Hearing."**

14. Scotiabank has at all time held that debtor and his wife submitted unsupported evidence to Scotiabank's attorney during case 12-08577 ESL which resulted in Scotiabank's withdrawal of the motion for relief of stay and acceptance of its unsecured status, and has requested as part of the proceedings filed by debtor, copy of said documents which has never been produced even though Scotiabank has provided a Certification from the Registry of the Property stating that its mortgage deed has at all times been recorded. See **Exhibit #5,** *supra*.

15. Case KAC 2015-0892 was dismissed on December 20, 2016 by the state court for lack of prosecution after Debtor and his wife failed to litigate their case. The Judgment states that debtor and his wife as plaintiffs had been sanctioned by the court for their non-

compliance, sanctions which as to this date remain unpaid. See **Exhibit #4,** *supra*, **Judgment for Case KAC 2015-0892.**

16. On October 25, 2016 the judicial sale of the property was held and Scotiabank legally acquired the property rights over said residence. **See #6, Judicial Sale Deed**.

17. On April 10, 2017, debtor and his wife filed a separate action to request Relief of Judgment, Declaratory Judgment, Estoppel, Damages and Unjust Enrichment before the Court of First Instance of San Juan, Case No. SJ2017CV00133 (herein after 2017 Relief Case). See **Exhibit #3,** *supra*, **Judgment for 2017 Relief Case**.

18. On August 3, 2017, and as part of the Foreclosure Case, Debtor and his wife filed an "Urgent Motion under R. 49.2 of Civil Procedure". See **Exhibit #7, Urgent Motion Under R. 49.2**.

19. On August 7, 2017, notified on August 9, 2017, the Hon. Angel R. Pagán Ocasio, issued an Order in the Foreclosure Case denying said urgent motion. **See Exhibit #8, August 7, 2017 Order in case KCD2009-2927.**

20. On August 24, 2017, Debtor filed a Motion for Reconsideration of the August 7, 2017 Order in the Original Case, which was denied by the state court on January 30, 2018. **See Exhibit #3,** *supra***.**

21. On January 22, 2018, Debtor filed a "Motion Requesting Amendments; Relief of Judgment, and Collateral Estoppel" which was denied by way of an Order dated January 30, 2018, notified on January 31, 2018. See **Exhibit #3,** *supra***.**

22. On February 15, 2018 Plaintiffs filed a "Motion under Rule 49.2 (c)/ (d)/ (e) in Reconsideration because of New Evidence". See **Exhibit # 3, supra.**

23. On March 13, 2018, notified on March 15, the state court in the Original Case issued an Order denying Plaintiffs' "Motion under Rule 49.2 (c)/ (d)/ (e) in Reconsideration because of New Evidence". See **Exhibit #3,** *supra.*

24. On July 26th 2018 Caleb Neira Rivera, Daisy Rodriguez Martinez, and the Conjugal Partnership Neira-Rodriguez presented a *Verified Motion for Preliminary Injunction to Stay State Court Proceedings* (hereinafter "Injunction Case "), Case No. 18-01323 CCC, through which they requested the PR District Court to order, pursuant to 28 U.S.C § 2283 and Rule 65 of the federal Procedure, a ***Preliminary Injunction*** enjoining Scotiabank from ***pursuing*** all State court Proceedings and requesting declaratory judgment of the validity of an Order entered on May 15, 2013 (hereinafter "2013 Bankruptcy Order") by the Bankruptcy Court in case number 12-08577 (ESL) (hereinafter "Bankruptcy Case"). See **Exhibit #9, Complaint for Injunction Case.**

25. Debtor and his wife argued that the 2013 Bankruptcy Order granting an objection to a secured claim is a judgment on its merits and deprives Scotiabank of its standing to execute an earlier default judgment ("2009 State Court Judgment") for collection of monies and mortgage foreclosure entered on December 15th 2009 by the San Juan Superior State Court (hereinafter "State Court") in civil case <u>Scotiabank de Puerto Rico v. Caleb Neira</u>, et als. KCD2009-2927 (hereinafter "Foreclosure Case"). Plaintiffs contend that the bankruptcy order granting an objection to a claim as secured invalidated the 2009 State Court Judgment in favor of the mortgage creditor, even though they voluntarily dismissed their bankruptcy petition before obtaining a discharge order and before obtaining the confirmation of a bankruptcy reorganization plan. See **Exhibit #9,** *supra.*

26. On August 8, 2018, the District Court in case 18-01323 CCC ordered debtor and his wife to Show Cause why the case should not be dismissed for lack of subject matter jurisdiction. See **Exhibit #10, Order to Show Cause, docket entry No. 11, Case 18-01323 CCC**.

27. Debtor filed his position on August 23, 2018, and after being considered by the District Court, the case was dismissed. See **Exhibit # 11, Judgment for case 18-01323 CCC.**

28. Debtor's eviction was scheduled for October 18, 2018. On October 10, 2018, debtor filed a Motion to Stay his eviction by stating that he had not received copy of an Order. An interim judged, stayed the eviction until the assigned judge ruled on the motion. See **Exhibit #12**, Order dated October 18, 2018.

29. On November 29, 2018, Hon. Angel R. Pagán denied debtor's request. See **Exhibit #13, Order dated November 29, 2018**.

30. On November 16, 2018, notified on December 3, 2018, the Court of First Instance of San Juan dismissed the 2017 Relief Case with prejudice and imposed attorney fees of $3,000.00 against debtor and his wife. See **Exhibit #3, Judgment in 2017 Relief Case**.

### III. DISCUSSION OF APPLICABLE LAW

**A. Good faith requirement in Bankruptcy procedures**

The principal purpose of the Bankruptcy Code is to grant a " 'fresh start' " to the " 'honest but unfortunate debtor.' " <u>Grogan v. Garner</u>, 498 U.S. 279, 286, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Both Chapter 7 and Chapter 13 of the Code authorize an insolvent individual to discharge certain unpaid debts toward that end. Specifically, Chapter 13 authorizes an individual with regular income to obtain a discharge after the successful completion of a payment plan

approved by the bankruptcy court. Marrama v. Citizens Bank of Massachusetts, 127 S. Ct. 1105, 1107 (2007).

One of the prerequisites to confirmation of a chapter 13 plan is that it be "proposed in good faith and not by any means forbidden by law". 11 U.S.C. § 1325(a)(3). Specifically, for Chapter 13 cases, section 1307(c) specifically enumerates ten circumstances in which a court may convert or dismiss a case. Although lack of good faith is not specifically enumerated as "cause," it is well established that **lack of good faith (or bad faith) is "cause" for dismissal or conversion of a Chapter 13 case under § 1307(c)**. [emphasis added]. See In re Cabral, 285 B.R. 563, 573 (1st Cir. BAP 2002); Leavitt, 171 F.3d at 1224; Ho, 274 B.R. at 877; In re Dicey, 312 B.R. 456, 458 (Bankr.D.N.H.2004); Fleury, 294 B.R. at 5; and In re Virden, 279 B.R. 401, 407 (Bankr.D.Mass.2002).

This "good faith" requirement in the Bankruptcy Code has remained unchanged since it was adopted in 1978. In re Shafer, 393 B.R. 655, 657 (Bankr.W.D.Wis.2008). An issue that has arisen with disturbing frequency is whether a debtor who acts in bad faith prior to, or in the course of, filing a Chapter 13 petition by, for example, fraudulently concealing significant assets, thereby forfeits his right to obtain Chapter 13 relief. In this context, despite the absence of any statutory provision specifically addressing the issue, **the federal courts are virtually unanimous that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a Chapter 13 case**. [emphasis added]. See, e.g., In re Alt, 305 F.3d 413, 418-419 (C.A.6 2002); In re Leavitt, 171 F.3d 1219, 1224 (C.A.9 1999); In re Kestell, 99 F.3d 146, 148 (C.A.4 1996); In re Molitor, 76 F.3d 218, 220 (C.A.8 1996); In re Gier, 986 F.2d 1326, 1329-1330 (C.A.10 1993); In re Love, 957 F.2d 1350, 1354 (C.A.7 1992); In re Sullivan, 326 B.R. 204, 211 (1st Cir. BAP 2005) (per curiam).

Although the term "good faith" is not defined in the Bankruptcy Code and thus, the meaning has been the subject of extensive litigation, the inquiry is necessarily a "fact intensive determination." In re Love, 957 F.2d at 1355. Therefore, **courts engage in a multi-faceted analysis that is applied on a case-by-case basis**. [emphasis added]. In re Virden, 279 B.R. at 407–09. "Whether this balancing of equities is called moralistic, judging, or evaluating, it is exactly what the courts have been left with under the ambiguous requirement of good faith." In re Dicey, 312 B.R. at 459.

Early on, a "the totality of the circumstances" test was devised using five non-exhaustive factors to determine good faith: (1) does the proposed plan state the debtor's secured and unsecured debts accurately? (2) does it state the debtor's expenses accurately? (3) is the percentage of repayment of unsecured claims correct? (4) if there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court? and (5) do the proposed payments indicate a fundamental fairness in dealing with one's creditors? In re Rimgale, 667 F.2d 426, 432–33(7th Cir.1982).[2] With respect to the first and fifth factors, the **timing of the bankruptcy filing** and the proportion of the total unsecured debt that is owed to the objecting creditor was relevant. Id. at n22. All in all, the focus was "whether or not under case circumstances there has been an abuse of Chapter 13's provisions, purpose or spirit. Id. at 433.

As the "totality of the circumstances" test evolved, courts began considering "why the debtor filed under chapter 13, how the debts arose, and whether those debts would be nondischargeable in a chapter 7" as part of the fifth Rimgale factor of "fundamental fairness". In

---

[2] The courts repeatedly caution, however, not to apply such factors mechanically. Id. at 629 (citing numerous cases for the proposition that "[t]he existence of 'bad faith' depends not on any one specific factor but on a combination of factors determined after careful examination of the facts of the particular debtor's case"); see also In re Willows of Coventry Ltd. P'ship, 154 B.R. 959, 967 (Bankr.N.D.Ind.1993) (citing cases) ("Indeed, the mechanical approach ... would automatically doom almost every single asset case, ab initio.").

re Smith, 848 F.2d 813, 818 (7th Cir.1988). Yet, the touchstone of the good faith analysis under section 1325(a)(3) remained "**whether the plan could be said to be a sincere effort at repayment, or was instead an effort to thwart repayment**". [emphasis added]. In re Schaitz, 913 F.2d 452, 453 (7th Cir.1990).

The good faith requirement in § 1325(a)(3) has remained unchanged since it was adopted in 1978 until today. ("[T]he court shall confirm a plan if ... the plan has been proposed in good faith and not by any means forbidden by law.") In In re Rimgale, 669 F.2d 426, 432–33 (7th Cir.1982), the Court further opined that, "[b]roadly speaking, the basic inquiry should be whether or not under case circumstances there has been abuse of Chapter 13's provisions, purpose, or spirit. This inquiry imposes a considerable responsibility on bankruptcy judges." Id. at 433.

It should be duly noted that, neither malice nor actual fraud is required to find a lack of good faith. It has been solved that, a finding of bad faith does not require fraudulent intent by the debtor. See In re Fleury, 294 B.R. at 6. The bankruptcy judge is not required to have evidence of debtor ill will directed at creditors, or that debtor was affirmatively attempting to violate the law- malfeasance is not a prerequisite to bad faith. In re Ho, 274 B.R. at 876 (citations omitted). In sum, the hallmark of the totality of the circumstances test is that the factors to be considered may vary in each case. "**The bottom line is whether the debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability**." [emphasis added]. In re Virden, 279 B.R. at 409. For instance, Courts inquire whether the debtor displayed "honesty of intention" and whether the debtor has "misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed the plan in an inequitable matter." See In re Johnson, 708 F.2d 865, 868 (2d Cir.1983); In re Hutchins, 400 B.R. 403, 410–11 (Bankr.D.Vt.2009); see also In re Plagakis, No. 03–CV0728(SJ), 2004 WL 203090 at page 4 (Bankr.E.D.N.Y. Jan. 27, 2004)

(setting forth circumstances under which courts have found bad faith in Chapter 13 cases, none of which are the filing of a plan dependent upon loan modification).

When considering whether a debtor filed a bankruptcy petition in bad faith under §707(b)(3)(A), necessarily a case-specific inquiry, it is useful to keep in mind that "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure. Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." In re Tully, 818 F.2d 106, 110 (1st Cir. 1987) (quotations and citations omitted); see also In re Marrama, 430 F.3d 474, 482 (1st Cir. 2005) (discussing bad faith in the context of a conversion from chapter 7 to chapter 13). Candid and complete disclosure by the debtor is a central theme of the Bankruptcy Code and is thus an important factor to be considered when evaluating the debtor's bad faith. See In re Hornung, 425 B.R. 242, 249 (Bankr. M.D.N.C. 2010) (citing certain factors helpful for determining bad faith, such as "eve-of-bankruptcy purchases, filing incomplete or false schedules, or failure to cooperate with the bankruptcy trustee").

In the case at hand, we are convinced that debtor's actions before and after filing the petition of bankruptcy were in bad faith. First of all, debtor lists the property in Paseo San Juan as his property, without mentioning that a judicial sale took place on October 25, 2016 which stripped him and his wife of all interest in said property. Second, debtor lists no other personal property to his name, which is completely unrealistic. Third, the first two bankruptcy cases were filed almost on the eve of the scheduled judicial dates and were dismissed once the judicial sales were vacated. Third, the instant petition has been filed on the eve of the second date of eviction. For the first date of eviction, October 18, 2018, debtor filed an urgent motion alleging that he had not been properly notified of an Order. He used this information to convince a Standing Judge

and the Marshall's Office that they could not proceed with the eviction, which they agreed. After the State Court ruled that debtor had received proper notification, and after Scotiabank moved to schedule a second date for eviction, debtor filed the instant petition. Fourth, debtor lists Scotiabank's mortgage as discharged when in fact he has not received a discharge order from any bankruptcy court. And finally, debtor's income and his proposed repayment schedule do not take into consideration debtor's tax obligations, which according to his Schedules is significant. It must be noted that as per debtor's 15-05590 Claim's Register, the IRS had reported a secured debt of $248,170.00 in taxes owed.

Debtor's inaccurate schedules are sufficient evidence that debtor's real objective is to once more delay the eviction of his property. A careful review of the information disclosed, and the repayment scheduled proposed reveals that debtor has no real intention of repaying or restructuring his finances or of complying with the bankruptcy code. This is not excusable neglect or an omission. The State Court in the 2015 and the 2017 Relief Cases correctly sanctioned debtor's conduct, but it is clear that it was not a deterrent and that debtor continues to manipulate the process to delay the eviction of his property.

Debtor's conduct is clearly egregious, and this Court should not allow him to continue in bankruptcy, to delay eviction and hold creditors hostages in a never ending legal process.

WEREFORE, Scotiabank requests that this Court dismiss Debtor's Chapter 13 bankruptyc filing with a bar to re-file of one (1) year.

**RESPECTFULLY SUBMITTED.**

## NOTICE

Within FOURTEEN (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this document has been served, or any other party to the action who objects this document, shall serve and file an objection or other appropriate response with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the proposed document will be deemed unopposed.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**: That today I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which, on information and belief, shall automatically notify the parties' attorneys of record, if any has appeared, at their e-mail addresses, and which pursuant to Local Civil Rule 5.1(b)(2) constitutes the equivalent of service.

In Guaynabo, Puerto Rico, this 14th day of January, 2019.

**VAZQUEZ & ESTRELLA LAW OFFICES, LLC**
PMB 407
Ave. Esmeralda 405
Suite 2
Guaynabo, Puerto Rico 00969-4427
Tel: (787) 402-7275
e-mail: yvazquez@vazquezestrellalaw.com


/S/ **YASMÍN R. VÁZQUEZ VÁZQUEZ**
**USDC 217603**